# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

TYLER BRENT CLIFTON,

       Plaintiff,

  v.

JEFF DAVIS COUNTY, GEORGIA; and
RAY WOOTEN, HUGH BRANTLEY,
WANDA MARCHANT, WAYNE HALL,
CARLA ROBERTS POWELL, and SHERIFF
PRESTON BOHANNON, Individually,

       Defendants.

CIVIL ACTION NO.: 2:16-cv-108

## O R D E R

Presently before the Court is Defendants' Motion for Summary Judgment, (doc. 56).[1] This case arises out of a series of events in Jeff Davis County, Georgia, that resulted in the criminal indictment and prosecution of Plaintiff Tyler Brent Clifton. Plaintiff asserts that Defendant Jeff Davis County and Defendants Ray Wooten, Hugh Brantley, Wanda Marchant, Wayne Hall, Carla Roberts Powell, and Sheriff Preston Bohannon, in their individual capacities, conspired to maliciously prosecute him in violation of federal and Georgia law. (Doc. 43, pp. 2–3, 10–12.) Based on the undisputed facts, Plaintiff has failed to support any of his claims with sufficient evidence to survive summary judgment. Moreover, even if a genuine dispute of material fact existed as to the merits of Plaintiff's claims, Defendants would be shielded from

---

[1] Plaintiff also asserted claims against the Jeff Davis County Board of Commissioners, the Jeff Davis County Sheriff's Department, and Defendants Wooten, Brantley, Marchant, Hall, Powell, and Bohannon in their official capacities. (Doc. 1.) However, the Court granted a Motion to Dismiss all claims against the Sheriff's Department on April 6, 2017, (doc. 17), and granted a separate Motion to Dismiss the Board of Commissioners and the individual Defendants in their official capacities on July 17, 2017, (doc. 40).

Plaintiff's federal claims by qualified immunity and from his state law claims by official immunity. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment, (doc. 56). The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

## BACKGROUND

### I. Procedural History

Plaintiff filed this suit in July 2016, (doc. 1), and subsequently filed an Amended Complaint, (doc. 43), alleging violations of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 and violations of Georgia law. (Id.) Specifically, Plaintiff alleges that Defendants "reached an understanding to arrest and prosecute" him after he installed a water line under a county road, (id. at p. 11), and that as a result, Defendants are liable for: malicious prosecution in violation of the Fourth Amendment and Georgia law (Counts I, III); conspiring to violate his constitutional rights (Count II); intentional infliction of emotional distress in violation of Georgia law (Count IV); attorney's fees under 42 U.S.C. § 1988 and Georgia law (Count V); and punitive damages under § 1983 and Georgia law (Count V). (Id. at pp. 10–12.) Plaintiff asserts these claims against Defendant Jeff Davis County (hereinafter, the "County") and Defendants Ray Wooten, Hugh Brantley, Wanda Marchant, Wayne Hall, Carla Roberts Powell, and Preston Bohannon in their individual capacities. (Id. at pp. 2–3.) At all times relevant to this action, Defendant Wooten served as the Jeff Davis County Board of Commissioners Chairman, Defendants Marchant and Hall served as commissioners, Defendant Powell was employed as the County Attorney, and Defendant Bohannon was employed as the County Sheriff. (See generally Docs. 56, 61.) While Defendant Brantley was not serving as a commissioner at the time Plaintiff

installed his water line, he had served as a commissioner in the past.[2] (Doc. 61-10; Doc. 80, p. 6.) Defendants filed this Motion for Summary Judgment on December 18, 2017. (Doc. 56). Plaintiff filed a Response, (docs. 61, 62), and Defendants filed a Reply, (doc. 68).[3] In an Order issued on October 26, 2018, the Court ordered the parties to file supplemental briefs on the issues of qualified and official immunity. Defendants filed a supplemental brief, (doc. 77), Plaintiff filed a Response, (doc. 80), and Defendants filed a Reply, (doc. 81). Based on factual clarity provided by these supplemental briefs, the Court has determined that Defendants' Motion is due to be granted on the merits, regardless of whether immunity protects any of the Defendants. However, the Court cites to these documents as needed for factual assertions.

---

[2]  In his Response to Defendants' supplemental brief on qualified immunity, Plaintiff "conceded" his claims against Defendant Brantley. (Doc. 81, p. 15 n.3.) Plaintiff, however, has not moved to dismiss Brantley as a Defendant pursuant to the Federal Rules of Civil Procedure and the Local Rules. As a result, the Court's rulings in favor of the Defendants in this Order apply to the claims asserted against Defendant Brantley.

[3]  On April 11, 2019, Plaintiff's counsel filed a "Supplemental Brief in Response to Defendants' Motion for Summary Judgment." (Doc. 82.) In this document, Plaintiff declares that he made "a recent discovery" that he wishes "to bring [] to the Court's attention as the Court considers Defendants' Motion for Summary Judgment." (Id. at p. 1.) In this brief—filed over a year after the expiration of Plaintiff's deadline for filing a Reply brief—Plaintiff presents new evidence that purportedly supports his claims. (Id.) However, he neglects to offer any basis for the Court to consider the evidence, despite the filing's untimeliness. "[W]here a party fails to move for an extension or seek leave of the Court to file additional evidentiary submissions with its reply brief, and where a party fails to show excusable neglect due to newly-discovered evidence, courts routinely decline to consider the untimely filings." Garner v. Acuity Brands Lighting, Inc., No. 1:16-CV-0365-LMM-JSA, 2017 WL 10753617, at *14 (N.D. Ga. July 6, 2017), report and recommendation adopted, No. 1:16-CV-0365-LMM-JSA, 2017 WL 10754455 (N.D. Ga. July 24, 2017); see also Mosley v. MeriStar Mgmt. Co., LLC, 137 F. App'x 248, 250 (11th Cir. 2005) (per curiam) (district court did not abuse its discretion in striking untimely filing when filing was unaccompanied by showing of excusable neglect). "Deadlines are not meant to be aspirational," and the Eleventh Circuit Court of Appeals has stated that counsel should not feel that, "as long as counsel tries to act, he has carte blanche permission to perform when he desires. A district court must be able to exercise its managerial power to maintain control over its docket." Young v. City of Palm Bay, Fla., 358 F.3d 859, 864 (11th Cir. 2004). Accordingly, the Court declines to consider Plaintiff's Supplemental Brief in ruling on Defendants' Motion. However, even if the Court did consider Plaintiff's "new evidence," it would not alter the Court's analysis. See note 10, infra.

## II. Factual Background

The events giving rise to this action took place over a three-year period. In May 2013, Plaintiff appeared before the Jeff Davis County Board of Commissioners (hereinafter, the "Board") and sought permission to install a water line under a public road. (Doc. 62, p. 1.) The line was installed several days later, and in April of 2014, Plaintiff was indicted on criminal charges in connection with that installation. (Id., at pp. 3, 10.) The charges were disposed of via entry of *nolle prosequi* in April 2016. (Id. at pp. 1, 11.) The crux of Plaintiff's claims in this lawsuit is that the Defendants, based on feelings of ill will,[4] prompted and/or participated in a baseless criminal investigation regarding his installation of the water line which resulted in his indictment and prosecution. (See generally id. at pp. 1–11; doc. 61-20, p. 2.) The relevant details are discussed below.

### A. The City Hall Meeting

On May 20, 2013, the Board held a meeting, (doc. 62, pp. 1, 11), which was recorded and documented in written minutes.[5] (Doc. 57-7; Id. (audio).) Plaintiff's request to install a water pipe under Lonnie Johnson Road, a road which traverses two of his properties, was on the Board's agenda. (Id. (audio) at 27:44.) Prior to addressing Plaintiff specifically, one

---

[4] In his Amended Complaint and Response, Plaintiff emphasizes his previous conflicts with officials in Jeff Davis County. (Doc. 43, pp. 3–4; see generally doc. 61, pp. 3–4.) At some point prior to 2012, Plaintiff and another individual investigated the County's use of various public funds by submitting a relatively large number of records requests. (Doc. 43, p. 3.) In July 2012, the Board discussed whether to issue a restraining order restricting Plaintiff's ability to enter County offices and demand "that each county office produce documents immediately." (Doc. 57-2, p. 59.) Although it was never issued, the restraining order would not have prevented Plaintiff from making records requests. (Id.) Plaintiff contends these events provide evidence of malice, an element of his malicious prosecution claims. (See doc. 61, p. 25; doc. 80, p. 4.) However, as discussed herein, Plaintiff's malicious prosecution claims fail on other grounds; as such, these events are not material to the Court's analysis.

[5] The recording has been reviewed and taken into consideration by the Court. Plaintiff (during his deposition) conceded that, should any briefing or statement of fact in this case contradict the recording, the audio recording should control. (Doc. 61-4, p. 7.)

commissioner stated that he had discussed Plaintiff's request with three other commissioners and asked Plaintiff whether he wished to "cut or bore" the water line.[6] (Id. at 27:58–28:13.) Plaintiff responded that either option was fine. (Id. at 28:13.) The commissioner then summarized the concerns that were raised during his discussions with the other commissioners. (Id. at 28:15–29:40.) First, he noted that the County had previously dealt with a "cut" pipe located near Plaintiff's pond and explained that the pipe "blew out" after it was clogged with concrete. (Id. at 28:23–49.) The commissioner then told Plaintiff, "every one of [the commissioners] says that if you do bore it, you need to hire someone to do it and it needs to be double-sleeved." (Id.)

About a minute later, someone queried about who would be responsible for future damage if such damage should occur from Plaintiff's project. (Id. at 29:45–47.) In response, another commissioner explained, "That's up to y'all; if you want him to be responsible, the property owner, I think you'd be well to get it in writing that you'd allow him to place an inch and a half water line under the road . . . three foot below the top of the pavement" and that the property owner "agrees to be responsible for any damages resulting from that installation." (Id. at 29:47–30:45.) After more discussion about the proper placement of the line, someone stated that "there needs to be some kind of agreement" as to how the pipe would be installed and who would do the installation, and another person asked if the Board would "like to table" the discussion until it was "squared up." (Id. at 32:01–11.) Before answering the question, someone asked Plaintiff who was going to perform the water line installation. (Id. at 32:11.) Plaintiff stated that he did not know yet and then listed some options. (Id. at 32:12–28.) Defendant Wooten then said, "Why don't you do your due diligence on this thing, Tyler, and find out who you can get to do it and then just get back with us?" (Id. at 33:05; see also doc. 62, p. 2.)

---

[6] Aside from where a specific speaker is noted, the Court was unable to discern from the recording who was making which statements.

Plaintiff said "Alright, that's fine," and the Board passed a motion to table the matter. (Doc. 57-7 (audio) at 33:12–18; see also doc. 61-8 (newspaper article).)

## B. Installation of the Water Line and Subsequent Investigation

Approximately one week after the Board meeting, Plaintiff arranged for Emory Taylor to install the water pipe under Lonnie Johnson Road, and the work was completed on June 1, 2013. (Doc. 61, pp. 4–5.) Mr. Taylor utilized the "boring" method to install a 1.5-inch PVC pipe under the road, extending from one side of Plaintiff's property to the other.[7] (Id.; doc. 43, p. 5.) Plaintiff did not contact the Board prior to the pipe's installation. (Doc. 61, p. 4; doc. 62, p. 4.) On June 3, 2013, Defendant Hall returned to his home near Plaintiff's property after a trip out of town. (Doc. 62, p. 3.) After noticing Plaintiff had completed the project, Hall called Defendant Powell (the County Attorney) and the road superintendent. (Id.) The trio subsequently met to inspect the newly-installed pipe where they also discussed their concerns that the pipe could cause future damage to the road. (Id. at p. 4.) Within one week of the site inspection, Hall informed Defendant Wooten that Plaintiff had bored under the road without addressing any of the concerns discussed at the Board meeting. (Id.) Hall also argued with Plaintiff's father at some point after discovering the pipe. (Doc. 61-25; doc. 57-3, pp. 84–89.)

After meeting with Hall and the road superintendent, Powell took several steps to begin investigating whether Plaintiff's project damaged government property or violated any laws. (Doc. 61, p. 6.) First, Powell conducted legal research and used a listserv for county attorneys to inquire about laws related to Plaintiff's boring.[8] She then contacted the office of the Jeff Davis

---

[7] "Boring" refers to an underground pipe-installation method. (Doc. 61, p. 5.)

[8] While it is undisputed that Powell submitted an inquiry to the listserv, the exact substance of the post is unknown. Plaintiff repeatedly cites to a document, (doc. 61-14), to support the contention that Powell submitted a listserv post containing the phrase "any criminal warrant" prior to the investigation in 2013.

County District Attorney ("D.A.") to obtain advice on how to proceed; according to Powell, Assistant D.A. Kennedy ("A.D.A. Kennedy") told her to contact the local sheriff's department. (Doc. 57-1, p. 40.) Powell acted on this advice and asked the County Sheriff's Office to conduct an investigation. (Doc. 62, p. 6.) When Powell called the Sheriff's Office, she spoke with Defendant Bohannon. (Doc. 56-2, p. 6.) Bohannon assigned the matter to Deputy Jamie Taylor (whom Plaintiff did not name as a defendant), and Deputy Taylor eventually asked Powell to give a statement. (Doc. 62, p. 6.) Powell obliged. (Id.)

After the investigation, Deputy Taylor prepared a report (the "Report") and the resulting document is not disputed by either party. In addition to Powell's statement, the Report contained summaries of Deputy Taylor's conversations with Plaintiff, Plaintiff's father, Emory Taylor, and Emory Taylor's employer. (Doc. 61-22.) The case file also included photos of the property where the pipe was bored, a recorded copy of the May 20 Board meeting, a copy of a newspaper article containing highlights from the May 20 meeting, a DVD with video footage of Plaintiff's interview with Deputy Taylor, land plots, and various photos of other county roads.[9] (Id.) The Report did not contain any representations that Lonnie Johnson Road was visibly damaged and, in an affidavit prepared for this case, Deputy Taylor stated that he "did not see any damage to the road." (Id.; doc. 61-17, p. 3 (Taylor Aff.).) After he completed the Report, Deputy Taylor gave the case file to his secretary, and both he and his secretary contacted Powell to let her know the file was ready. (Doc. 62, p. 8.) At some point prior to April 2014, Powell picked up the file from the secretary and took it to the D.A.'s office. (Id.) There is no evidence that any Defendant

---

The Court thoroughly reviewed the document and found it to be devoid of any such phrase. In fact, the postings provided to the Court by Plaintiff are all dated after 2014.

[9] The Report indicates that the newspaper, DVD, land plots, and photos of other county roads were submitted to Deputy Taylor by Plaintiff. (Doc. 61-22, p. 6.)

interacted or spoke with anyone at the D.A.'s office about Plaintiff's case outside of Powell's initial conversation with A.D.A. Kennedy, Powell's delivery of the file to the D.A.'s office, and Powell's testimony at a later motions hearing, discussed below. (Doc. 61-4, p. 9; doc. 57-3, pp. 97–98 (Hall Dep.); 57-4, p. 10 (Bohannon Dep.); doc. 57-2, p. 57 (Powell Superior Ct. Test. Tr.); doc. 57-1, p. 53 (Powell Dep.).)

Plaintiff maintains that a secret meeting took place at some point prior to his prosecution where the Defendants who were serving as commissioners (along with other members of the Board) "voted" to seek his indictment. (Doc. 61, pp. 11–12.) In support of this contention, Plaintiff cites to an affidavit of a former commissioner, Steve Toler. (Id.) Toler states that he attended a meeting where Powell asked the commissioners if they wanted to "indict" Plaintiff, but he further explains that he "did not know exactly what the word 'indict' meant, but understood that [the Board] was going to get a statement from [Plaintiff] where he agreed to be responsible for any future damage to the roadway." (Doc. 61-24, p. 2.) Defendants, on the other hand, do not recall any such meeting and maintain that the record does not show such a meeting occurred. (Doc. 56-2, p. 14; doc. 57-3, pp. 74–75 (Hall Dep.).)

After this case was filed, Plaintiff obtained the contents of the D.A.'s file pursuant to a subpoena. (Doc. 61-2, p. 14.) Among the documents in the file was a printed copy of a 2009 Georgia Court of Appeals opinion (issued in an unrelated criminal proceeding) that had apparently been found via a search for certain words and terms on the "Lexis" database. (Doc. 61-23.) The document appears to have been printed on March 24, 2014. (Id.) The case pertained to the issue of interference with government property. (Id.) Additionally, the file contained what appeared to be an envelope with a printed return address for the "Law Offices of Ken W. Smith, P.C." along with the words "Investigator Jamie Taylor" written in Powell's

handwriting.  (Doc. 61-2, p. 14.)  The two documents were found adjacent to one another in the file, but the "Lexis" case opinion print-out does not contain the law office information (or any other information about who printed it).  (Id.)

### C.  Plaintiff's Indictment and Prosecution

On April 1, 2014, a grand jury indicted Plaintiff on charges of criminal trespass and interference with government property.  (Doc. 61-20, p. 2.)  Deputy Taylor was subpoenaed and testified before the grand jury.  (Doc. 61-17, p. 2.)  However, none of the Defendants participated in the grand jury proceedings.  (Doc. 62, p. 10.)  Plaintiff turned himself in on April 4, 2014. (Doc. 62, p. 10.)  Plaintiff's defense attorney eventually filed a motion to dismiss the indictment and there was an oral hearing on October 19, 2015; Powell testified at the hearing pursuant to a subpoena from Plaintiff's counsel.  (Doc. 61-4, p. 10; see generally doc. 57-2, pp. 16–109 (Powell Test. Tr.).)  On April 11, 2016, an A.D.A. sent Plaintiff's attorney an email stating that "[t]he State has decided not to proceed further on the indictment," and that a "nolle prosse" was forthcoming.  (Doc. 61-31, p. 2.)  The order of *nolle prosequi* was entered on April 13, 2016, and the charges against Plaintiff were dropped.  (Doc. 62, p. 11.)

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (emphasis and citations omitted).

## DISCUSSION

## I.      The Parties' Arguments

Plaintiff brings claims for: malicious prosecution in violation of the Fourth Amendment and Georgia law (Counts I, III); conspiring to violate his constitutional rights (Count II); intentional infliction of emotional distress in violation of Georgia law (Count IV); and attorney's fees and punitive damages pursuant to federal and Georgia law (Count V). (Doc. 43, pp. 10–12.) Plaintiff alleges that Defendants used their positions as county officials to encourage law enforcement to bring "false" charges against him and that they "conspired to have [him] prosecuted." (Doc. 61, p. 1.) Plaintiff argues the lack of visible damage to Lonnie Johnson Road caused by his boring proves that Defendants were determined to hold him criminally liable despite a dearth of evidence providing a basis for them to do so. (Id.) Plaintiff contends that these actions were motivated by "personal animus" stemming from his previous investigations into the County's records. (Id. at pp. 3–4.)

In their Motion, Defendants first argue that Plaintiff's claims for malicious prosecution fail as a matter of law. Because the D.A. made an independent choice to present the case to the grand jury, Defendants allege they cannot be held liable for malicious prosecution under § 1983 or Georgia law as they did not institute Plaintiff's prosecution. (Doc. 56-2, pp. 10, 21.) Further, Defendants maintain that Plaintiff's malicious prosecution claims fail because Plaintiff cannot prove the absence of probable cause for his prosecution; that is, Plaintiff has no evidence to support his allegations that Defendants wrongfully encouraged law enforcement officers to indict and prosecute him, gave false statements to law enforcement, fabricated evidence, or failed to disclose exculpatory evidence. (Id. at pp. 12–13, 22.) Defendants also allege that, even if

Plaintiff did have viable malicious prosecution claims, they would nonetheless be entitled to qualified and official immunity. (Id. at pp. 16, 24.)

In regard to the claim asserted against it, Defendant Jeff Davis County argues that, because "no violation of Clifton's rights has occurred," it cannot be held liable for malicious prosecution. (Doc. 56-2, pp. 18–19.) However, even if there was such a violation, the County further contends that summary judgment in its favor is proper as no actions in this case were taken by the County's final decisionmaker—a majority of the Board of Commissioners. (Id.)

Similarly, all Defendants argue that Plaintiff's conspiracy claim fails "for want of an underlying constitutional violation," and because there is no evidence "to establish the existence of an agreement between the County and the Sheriff to deprive [Plaintiff] of his rights." (Id. at p. 21.) Finally, Defendants contend that Plaintiff's claim for intentional infliction of emotional distress is time-barred. (Id. at p. 23.)

## II.    Analysis

### A.    Malicious Prosecution

As noted above, Plaintiff asserts malicious prosecution claims against all Defendants under both federal and state law. In his Amended Complaint, Plaintiff alleges that Defendants are liable because they "effectuated and encouraged [his] prosecution in violation of [his] Fourth Amendment rights," and willfully and maliciously prosecuted him without probable cause in violation of Georgia law. (Doc. 43, pp. 9, 11.) Malicious prosecution claims brought pursuant to Section 1983 arise under the Fourth Amendment, while O.C.G.A. § 51-7-40 governs claims asserted under Georgia law. Uboh v. Reno, 141 F.3d 1000, 1003–04 (11th Cir. 1998). To prevail on a malicious prosecution claim under Section 1983 or Georgia law, a plaintiff must show: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with

malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Green v. City of Lawrenceville, 745 F. App'x 881, 883 (11th Cir. 2018) (per curiam) (quoting Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008)). Here, elements (1) and (2) are disputed; however, for the reasons explained below, Plaintiff has not put forth sufficient evidence to prove either element under both federal and state law. (Doc. 56-2, pp. 10–16; doc. 68, pp. 4–8.)

As to the first element—prosecution by the defendant—Defendants argue that there is an absence of evidence tending to show that they instituted, participated in, or improperly influenced Plaintiff's prosecution. (Doc. 56-2, p. 15; doc. 68, p. 4–8.) In other words, Defendants maintain that the D.A. made an independent decision to present charges against Plaintiff to the grand jury and that this decision, as well as the grand jury's subsequent indictment, "broke [any] chain of causation." (Doc. 56-2, p. 11 (quoting Jones v. Cannon, 174 F.3d 1271, 1287–88 (11th Cir. 1999).) Plaintiff disagrees and argues that there is "ample evidence" indicating that Defendants instituted or continued the prosecution. (Doc. 61, p. 16.) Specifically, Plaintiff points to (1) Defendants' purported "secret and illegal meeting" wherein they voted to "indict" Plaintiff, (2) the fact that the D.A.'s file contained legal research situated next to a separate document that appeared to be addressed, in Powell's handwriting, to "Investigator Jamie Taylor," and (3) the fact that Powell delivered Deputy Taylor's investigative file to the D.A. (Id. at 17.) Plaintiff also speculates (without providing any supporting record citations) that Defendants "almost assuredly held a meeting with the prosecution about the information contained in Deputy Taylor's investigative file," and further claims that several Defendants "intentionally (or at least recklessly) omitted the fact that the roadway was not damage[d] when interacting with law enforcement." (Id. at pp. 17–18.)

The Eleventh Circuit Court of Appeals has stated that, under federal law, a defendant is not the legal cause of a prosecution or other criminal proceeding where "there [is] no evidence that [the defendant] had anything to do with the decision to prosecute or that [the defendant] had 'improperly influenced' that decision." Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 947 (11th Cir. 2008) (per curiam) (quoting Eubanks v. Gerwin, 40 F.3d 1157, 1160 (11th Cir. 1994)). Put another way, the "intervening acts of the prosecutor, grand jury, judge and jury . . . each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant[s]." Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir. 1989).

In Eubanks v. Gerwin, the Eleventh Circuit considered a malicious prosecution claim against police officers who conducted an investigation that led to the plaintiff's prosecution for drug trafficking. 40 F.3d at 1159. The record showed that the defendants had "fully appris[ed] the State Attorney of all relevant information known to them, including that which weighed for and against Eubanks' guilt," and eventually "turn[ed] over all relevant information about the matter to the State Attorney." Id. at 1161. Specifically, the police officers disclosed "mixed polygraph results, the fruitless search of Eubanks' home and Eubanks' lack of prior criminal record." Id. at 1160. The court held that, because none of the officers had "anything to do with the decision whether or not to prosecute [plaintiff]" and "did [not] act in such a way as improperly [to] influence the decision by the [prosecutor]," the defendant officers were entitled to summary judgment on the malicious prosecution claim. Id. at 1160–61; see also Whiting v. Traylor, 85 F.3d 581, 586 n.10 (11th Cir. 1996) (prosecutor's decision to continue prosecution can sever the causal link between an arresting officer's conduct and the plaintiff's injury).

Similarly, a defendant has not legally "instigated" or "prosecuted" a plaintiff under Georgia law if another individual "made an 'independent decision to arrest or prosecute.'" Jackson v. Kmart Corp., 851 F. Supp. 469, 472 (M.D. Ga. 1994) (citation omitted) (applying Georgia law). If, however, the evidence demonstrates that a defendant's "persuasion was the determining factor in inducing [another] officer's decision, or that he gave information which he knew to be false and so unduly influenced the authorities, he may be held liable." Baggett v. Nat'l Bank & Trust Co., 330 S.E.2d 108, 110 (Ga. Ct. App. 1985).

Here, Plaintiff does not cite to, and the Court is not aware of, any evidence indicating that Defendants were responsible for the decision to prosecute Plaintiff or the continuation of his prosecution. Defendants Hall and Wooten, through Defendant Powell, presented their concerns about the legality of Plaintiff's boring under a county road to the Sheriff, who then assigned a deputy to investigate the situation and prepare a report. (Doc. 62, pp. 5–6.) The report was then delivered to the D.A.'s office, and the D.A. subsequently decided to present charges to the grand jury. No Defendant testified at the grand jury proceedings. (Doc. 62, p. 10.) There is no evidence that any Defendant presented deceptive information to another Defendant, to the investigator, or—most importantly—to the D.A. There is also no evidence that any Defendant pressured the D.A. to bring the charges. Indeed, there is simply no evidence supporting Plaintiff's allegations that one or more of the Defendants ever met or spoke with the D.A. about this case after Powell's initial conversation with A.D.A. Kennedy. Even if there was such communication, there is no evidence that any such conversation involved deception, undue pressure, or anything that would support a finding of undue or improper influence. [10]

---

[10] As the Court explained in note 3, *supra*, Plaintiff's counsel recently submitted new evidence to the Court. (Doc. 82.) Apparently, "Plaintiff's counsel discovered a resume on the internet that appears to contain [the D.A.'s] cell phone number." (Id. at p. 1.) After cross-referencing this phone number with

Moreover, even assuming Defendants held the alleged "secret" meeting where they voted to "indict" Plaintiff, there is no evidence that this vote influenced the D.A. (or anyone else). Moreover, it is undisputed that no Defendant had the independent legal authority to commence the prosecution or present charges to a grand jury even after such vote was taken. (Doc. 61, p. 2; doc. 68, p. 4.) Similarly, even if Defendant Powell gave Deputy Taylor the legal research found in the D.A.'s folder, Deputy Taylor was not the party responsible for choosing to prosecute Plaintiff and there is no evidence that, because of the research, Deputy Taylor did anything that persuaded the D.A. to bring charges. In fact, as Plaintiff frequently points out, Deputy Taylor did not think criminal charges were warranted. (Doc. 61, p. 18; doc. 61-17, p. 3 (Taylor Aff.).) Further, there was nothing false or deceptive about the legal research.

Finally, there is no evidentiary support for Plaintiff's argument that the road's lack of damage was unknown to the D.A. because Defendant Powell failed to tell Deputy Taylor that "the road was *not* damaged." (Doc. 61, p. 18.) Regardless of what Defendants did or did not tell Deputy Taylor, the record before the Court indicates that the condition of the road was a fact

---

Defendant Powell's phone records (obtained by Plaintiff during discovery), Plaintiff argues this evidence proves that Powell communicated with the D.A., refuting evidence already in the record. (Id. at pp. 1–2.) The Court reviewed this evidence and, while not obliged to consider it in its decision, finds it to be inconsequential to the findings in this Order. The documents show that Powell received three incoming calls from the at-issue phone number—two on March 3, 2014, and one on March 28, 2014. (Docs. 82-2, 82-3.) The calls lasted one minute (or less) each. (Id.) This evidence does *not* contradict any of Powell's statements as Plaintiff argues. Powell's testimony has been that she did not have any contacts with the D.A.'s office *pertaining to Plaintiff's case.* (Doc. 61-2, pp. 12, 15; doc. 63-1.) At best, the documents submitted by Plaintiff establish that D.A. Johnson called Powell three times in March 2014 and the pair spoke for one minute or less on each occasion. Even assuming the cell phone number belongs to the D.A., and even viewing this evidence in the light most favorable to Plaintiff, there is no basis for a jury to find that Plaintiff's case—as opposed to any other case or matter—was discussed by the D.A. and the county attorney during those phone calls. Such a finding would require impermissible speculation by the jury. Moreover, this evidence indicates that D.A. Johnson contacted Powell—not that Powell initiated any communications with the D.A. Thus, this new evidence does not remedy the evidentiary void that is ultimately fatal to Plaintiff's case—the lack of evidence tending to show that any Defendant influenced or fraudulently induced the D.A.'s office to prosecute Plaintiff.

readily available to the D.A. Deputy Taylor's investigative file, in its entirety, was given to the D.A.[11] (Doc. 61-4, p. 9 (Clifton Dep.).) The file contained Plaintiff's own statement that he did not damage the road along with photos of the road. (Doc. 61-21.) Furthermore, Deputy Taylor, who personally investigated the road and did not believe it to be damaged, testified before the grand jury. (Doc. 61-4. p. 9; doc. 61-17 (Taylor Aff.).) While Deputy Taylor's actual testimony and other evidence presented to the grand jury are unavailable, the record simply does not support a finding that the condition of the road was unknown by the D.A.—especially when, as stressed by Plaintiff, "damage" is an element of the offense he was indicted for. (Doc. 80, pp. 9–10. (citing O.C.G.A. § 16-7-24(a)).) However, even if the condition was somehow unknown to the D.A, the record shows that such ignorance is not due to any action or misrepresentation of the Defendants. Thus, Plaintiff has not shown a basis for finding that the at-issue prosecution was initiated based on false information, let alone false information provided by or at the behest of Defendants. See Williams, 297 F. App'x at 947. Rather, like the State Attorney in Eubanks, the D.A. had "all relevant information known to [Defendants], including that which weighed for and against [Plaintiff's] guilt." 40 F.3d at 1161.

While it is undisputed that, like the investigating officers in Eubanks, the actions of several Defendants initiated the *investigation* into Plaintiff's boring, (doc. 62, pp. 4–6), it was the D.A.—not Defendants—who made the decision to initiate and carry out the *prosecution*, and Plaintiff has not shown that any Defendant had anything to do with that decision. See id.; see also Marshall v. West, 507 F. Supp. 2d 1285, 1303 (M.D. Ala. 2007) ("It is true that [defendants] started the chain of events which led to formal charges being brought against Plaintiff. The 'but for' causation test, however, is not the standard under Eubanks[.]"); Jackson, 851 F. Supp at 472

---

[11] Plaintiff does not allege that Defendants tampered with the file or altered the report in any way.

(defendant did not instigate prosecution where his known desire for plaintiff's arrest was not the "determining factor" for arrest). As Plaintiff has failed to put forth sufficient evidence to establish that Defendants instituted, continued, or improperly influenced his prosecution, an essential element of his claim, the Court finds that Defendant is entitled to summary judgment on this issue.

Moreover, even assuming, *arguendo*, that Plaintiff has made the necessary showing on the first element, his malicious prosecution claim would still fail as he cannot show a lack of probable cause, the second element. Because the absence of probable cause is an element of the tort, "the existence of probable cause defeats a § 1983 malicious prosecution claim." Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010). Defendants allege that the grand jury's indictment demonstrates the existence of probable cause and that Plaintiff has not shown the indictment was procured by fake or fraudulent means. (Doc. 56-2, pp. 11–16.) In response, Plaintiff argues that, had Defendants affirmatively told Deputy Taylor that Lonnie Johnson Road was not damaged, "there would have been no probable cause to indict [him] in the first place." (Doc. 61, pp. 18–19.) The Court agrees with Defendants.

Ordinarily, "an indictment by a properly constituted grand jury conclusively determines the existence of probable cause and provides the authority for an arrest warrant . . . ." Rodriguez v. Ritchey, 556 F.2d 1185, 1991 (5th Cir. 1977), *abrogated on other grounds by* Malley v. Briggs, 475 U.S. 335 (1986).[12] However, such evidence is not always conclusive. Where an indictment has been issued, a prosecuting party is insulated from liability only where he made "a fair, full and complete statement of the facts as they exist. He is not relieved if he conceals facts,

---

[12] In Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

nor if he distorts facts, nor if he is negligent in ascertaining facts." Fleming v. U-Haul Co., 541 S.E.2d 75, 78 (Ga. Ct. App. 2000); see also Kelly v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996) ("If [an] indictment was procured on *knowingly* false testimony, it would not support a finding of probable cause [under Georgia law]."); Pombert v. Glock, Inc., 171 F. Supp. 3d 1321, 1330 (N.D. Ga. 2016) (an "allegedly malicious prosecutor" must fairly and fully portray facts "to be protected by the grand jury's indictment").

Here, Plaintiff has not pointed to any evidence indicating that the prosecution or subsequent indictment were procured by fraudulent or otherwise improper means. Any failure by Defendants to affirmatively disclose the road's condition was inconsequential as the record demonstrates that the D.A. had access to the information. Accordingly, the Court finds that, as a matter of law, there was probable cause for Plaintiff's arrest and subsequent prosecution, the presence of which "defeats" his malicious prosecution claims. See Grider, 618 F.3d at 1256.

As Plaintiff has failed to put forth sufficient evidence to establish that Defendants instituted his prosecution or that Defendants did so without probable cause, he cannot prove essential elements of his § 1983 and state law malicious prosecution claims. "The elements of malicious prosecution are listed in the conjunctive; therefore, if [a p]laintiff is unable to prove any of the four elements, his claim necessarily fails." Holland v. City of Auburn, 657 F. App'x 899, 903 (11th Cir. 2016) (per curiam); see also Underwood v. City of Bessemer, No. 2:15-CV-01585-JHE, 2018 WL 4685461, at *14 (N.D. Ala. Sept. 28, 2018) (unsupported speculation about defendants' influence on decision to prosecute was insufficient to meet evidentiary burden on summary judgment); Condon v. Vickery, 606 S.E.2d 336, 339 (Ga. Ct. App. 2004) (affirming grant of summary judgment where plaintiff could not prove one element of malicious prosecution claim). Accordingly, Defendants are entitled to judgment in their favor as to

Plaintiff's malicious prosecution claims against them, and the Court **GRANTS** Defendants' Motion on this issue.[13]

## B.    Conspiracy

Defendants also moved for summary judgment on Plaintiff's Section 1983 conspiracy claim.  (Doc. 56-2, pp. 20–21.)  "To sustain a conspiracy action under § 1983, . . . a plaintiff must show an underlying actual denial of its constitutional rights."  GJR Invs. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998), *abrogated on other grounds, as recognized by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).  Because the Court finds that Plaintiff's constitutional claim lacks the factual support necessary to survive the summary judgment stage, the Court **GRANTS** Defendants' Motion as to Plaintiff's conspiracy claim.

## C.    Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff's claim for intentional infliction of emotional distress ("IIED") is time-barred and, as a result, they are entitled to judgment in their favor.  (Doc. 56-2, p. 23.)  A claim for intentional infliction of emotional distress is subject to a two-year statute of limitations, governed by O.C.G.A. § 9-3-33.  Plaintiff filed the present action on July 8, 2016. (Doc. 1.)  Thus, to have a viable claim, Plaintiff must have evidence that Defendants acted within the two-year period prior to that date; in other words, to survive summary judgment, Plaintiff must point to evidence of Defendants' conduct occurring after July 8, 2014.  In a previous Order ruling on Defendants' Motion to Dismiss, (doc. 20), the Court held that Plaintiff's claim was not clearly time-barred because the Complaint alleged conduct that occurred after that date.  (Doc.

---

[13]  In light of the Court's ruling in this subsection, the County, like the individual Defendants, is entitled to judgment in its favor on the malicious prosecution claim against it.  While a municipality—here, the County—can be "liable for constitutional violations committed by the municipality's employees" in certain situations, "there can be no municipal liability under § 1983 absent a constitutional violation." Winters v. Ranum, 730 F. App'x 826, 828 (11th Cir. 2018) (per curiam).

40, pp. 5–6.)  Specifically, the Court noted that the entry of *nolle prosequi* in Plaintiff's case occurred on April 13, 2016.  (Id.)

While they do not dispute that the charges against Plaintiff were dismissed on that date, Defendants contend that "discovery has conclusively revealed that Defendants' involvement with [Plaintiff] terminated when [] Powell delivered the investigative file to the District Attorney, which happened no later than March of 2014."  (Doc. 56-2, p. 23.)  Defendants concede that Powell testified at a hearing related to Plaintiff's prosecution in 2015 but argue that, because the testimony was under oath and pursuant to a subpoena requested by Plaintiff's counsel, the conduct does not qualify as "extreme or outrageous."  (Id.)  In his Response, Plaintiff does not directly address Defendants' argument; rather, Plaintiff urges that the statute of limitations was tolled by Powell's alleged provision of legal research "days before [Plaintiff's] indictment," a fact which "was not disclosed" until after the lawsuit was filed.  (Doc. 61, p. 25 (citing O.C.G.A. § 9-3-96).)  Plaintiff also vaguely asserts that "Defendants participated more than they admitted." (Id.)  In their Reply, Defendants note that, even if the facts alleged by Plaintiff were true, he "does not even attempt to show how these facts would entitle him to equitable tolling on the basis of fraudulent concealment[.]"  (Doc. 68, p. 17.)  The Court agrees with Defendants.

For purposes of summary judgment, it is undisputed that the at-issue research would have been provided "before [Plaintiff's] indictment" in April of 2014.  (Doc. 61, p. 25.)  Plaintiff suggests—without any explanation or supporting argument—that the statute of limitations "can be tolled" because Defendants did not disclose the legal research to Plaintiff until after the lawsuit was filed.  (Id.)  Even assuming Powell did conduct the research, did provide it to Deputy Taylor, and did conceal that fact from Plaintiff, such actions would not toll the statute of limitations under the fraudulent concealment statute.  It is established under Georgia law that the

type of fraud "which is necessary to toll the statute of limitations until the discovery of the fraud *which gives rise to the cause of action*, must be actual fraud, involving moral turpitude, *which 'debars and deters' the plaintiff from his action . . . .*" Union Circulation Co. v. Tr. Co. Bank, 247 S.E.2d 197, 198 (Ga. Ct. App. 1978) (emphasis added) (citations omitted); see Charter Peachford Behavioral Health Sys. v. Kohout, 504 S.E.2d 514, 522 (Ga. Ct. App. 1998) ("The key element for such tolling to apply is that the fraud must have debarred or deterred plaintiff from bringing the suit" in a timely manner.)  Plaintiff has not pointed to any facts or attempted to explain how his ignorance about the research prevented him from discovering his cause of action or deterred him from pursuing his claim. (Doc. 61, p. 25.)  Accordingly, the tolling statute is inapplicable to Plaintiff's intentional infliction of emotional distress claim, and he is time-barred from basing that intentional infliction of emotional distress claim on the alleged provision of legal research to the investigator.

Finally, though Plaintiff does not address it in his Reply, Defendants do point out that Powell testified in a hearing during Plaintiff's prosecution, an event which occurred after July 8, 2014. (Doc. 56-2, p. 23.)  Assuming Plaintiff intends to base his intentional infliction of emotional distress claim on Powell's participation in his hearing to pursue his intentional infliction of emotional distress  claim against her, the record before the Court does not support a finding that this act meets the level of outrageousness required to support an intentional infliction of emotional distress  claim.[14]  Under Georgia law, a plaintiff asserting an intentional infliction of emotional distress claim is required to show: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) the conduct caused the emotional

---

[14]  This is one of several obfuscating aspects of his Response, and the Court reminds Plaintiff's counsel that "[t]he burden is not on the [C]ourt to connect the links in the logical chain of a wouldbe [sic] argument where no actual argument is made." Gordon v. United States, No. 2:15-cv-758-MHT-SRW, 2016 U.S. Dist. LEXIS 118364, at *31 (M.D. Ala. Aug. 31, 2016).

distress; and (4) the emotional distress was severe. Amstead v. McFarland, 650 S.E.2d 737, 742 (Ga. Ct. App. 2007). Whether the at-issue conduct is sufficiently extreme or outrageous is a question of law for the court. Id. Further, "[i]n order to rise to the requisite level of outrageousness, the defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (quoting McClung Surveying v. Worl, 541 S.E.2d 703, 707 (Ga. Ct. App. 2000)). Powell testified at the hearing pursuant to a subpoena—a legal obligation—that was issued at Plaintiff's attorney's request. (Doc. 56-2, p. 23.) Though "testifying falsely or in a misleading fashion" is vaguely mentioned in his Amended Complaint, (doc. 43, p. 9), Plaintiff has not pointed to any testimony that he claims was false or misleading, nor has he specifically argued that Powell's mere participation in the hearing qualifies as "extreme" conduct; again, Plaintiff did not mention the testimony in his Response. Thus, Powell's testimony cannot undergird the intentional infliction of emotional distress claim and cannot provide grounds for tolling the statute of limitations on that claim.

Because Plaintiff has not pointed to actionable conduct occurring after July 8, 2014, and because there is no basis for finding that the statute of limitations was tolled, Defendants are entitled to summary judgment on this issue. Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiff's claim for intentional infliction of emotional distress.

### D. Punitive Damages

Plaintiff also argues that he is entitled to punitive damages pursuant to Georgia law, O.C.G.A. § 51-12-5.1(b), and under § 1983. Plaintiff contends that such damages are warranted because Defendants' "actions constitute willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care that shows a conscious indifference for the consequences

of their actions." (Doc. 43, p. 12.)  Under Georgia law, punitive damages may only be awarded

if there is a valid claim for actual damages to which it could attach; punitive damages may not be

recovered if there is no entitlement to compensatory damages.  O.C.G.A. § 51-12-5.1(b); see J.

Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 449 (Ga. Ct. App. 2007).

Similarly, "a plaintiff in a § 1983 suit cannot recover punitive damages unless he first

demonstrates that he has been deprived of a right secured by the Constitution or laws of the

United States."  Curves, LLC v. Spalding County, No. 3:07-CV-10-JTC, 2010 WL 11507905, at

*7 (N.D. Ga. July 23, 2010), aff'd, 685 F.3d 1284 (11th Cir. 2012).  For the reasons discussed

above, Plaintiff cannot recover on any claims against Defendants under Georgia law or 42 U.S.C.

§ 1983.  Without any remaining underlying claims, Plaintiff is not entitled to punitive damages,

and the Court **GRANTS** Defendants' Motion on this issue.

>    **E.**    **Attorney's Fees**

Plaintiff also requests attorney's fees and expenses of litigation under O.C.G.A. § 13-6-

11 and 42 U.S.C. § 1988.  (Doc. 43, p. 12.)  Like a claim for punitive damages, a claim for

attorney's fees under Georgia law requires a viable underlying claim.  See Gilmour v. Gates,

McDonald & Co., 382 F.3d 1312, 1316 (11th Cir. 2004) (citing United Cos. Lending Corp. v.

Peacock, 475 S.E.2d 601 (Ga. 1996)).  The same principle applies when a Plaintiff seeks to

recover attorney's fees under federal law.  See 42 U.S.C. § 1988 (providing that the court may

allow "the prevailing party, other than the United States, a reasonable attorney's fee").  Because

none of his claims survive summary judgment, Plaintiff's claims for attorney's fees also fail.

Accordingly, the Court **GRANTS** summary judgment in favor of Defendants on such claims.

### F.    Qualified and Official Immunity

For the reasons explained throughout this Order, the Court finds that none of Plaintiff's claims survive the summary judgment stage and that Defendants are entitled to judgment in their favor on the merits.  In the absence of any viable claims, the Court need not address the issues of qualified and official immunity.  See Barker v. Norman, 651 F.2d 1107, 1124 (5th Cir. 1981) ("[I]f the defendant has established beyond dispute that he did not engage in the complained-of conduct, then summary judgment is appropriate. [This] has nothing to do with the qualified immunity defense; rather, it is based on the plaintiff's inability to prove the facts essential to recovery."); Haberle v. Univ. of Alabama in Birmingham, 803 F.2d 1536, 1541 n.3 (11th Cir. 1986) (qualified immunity analysis unnecessary where case was decided on the merits); Langton v. Dep't of Corr., 469 S.E.2d 509, 510 (Ga. Ct. App. 1996) (declining to address official immunity where plaintiff had no viable claims).  However, even if a genuine dispute of material fact existed as to the merits of Plaintiff's claims, the Defendants would nonetheless be entitled to summary judgment on the principle of qualified immunity as to Plaintiff's federal claims and on official immunity as to Plaintiff's state law claims.

### (1)    Qualified Immunity

Defendants contend that qualified immunity shields them from Plaintiff's claims asserted under federal law.  (Doc. 56-2, pp. 16–17.)  "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  "Qualified immunity is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012) (quotations and citations omitted). As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation, including discovery." Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)) (internal quotation marks and alteration omitted).

To rely upon qualified immunity, a defendant first must show that he or she acted within his or her discretionary authority. Mobley v. Palm Beach Cty. Sheriff Dep't., 783 F.3d 1347, 1352 (11th Cir. 2015). Specifically, a defendant must show that he or she "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Here, Defendants have met this burden. After discovering Plaintiff bored under a public road prior to receiving the Board's approval, Defendants were concerned that the pipe either damaged or would cause future damage to county property. (Doc. 68, p. 13.) As county officials, it was within their discretionary authority to conduct a cursory investigation, seek advice about potential legal recourse, and refer the matter to the Sheriff's Office for further investigation. (Id.) Therefore, Defendants may properly assert the defense of qualified immunity and the burden now shifts to the Plaintiff to show that qualified immunity is not appropriate. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Court must grant qualified immunity unless the facts taken in the light most favorable to Plaintiff show (1) that there was a violation of the Constitution; and (2) that the illegality of the Defendant's actions was clearly established at the time of the incident. Hoyt, 672 F.3d at 977. The Court has discretion in deciding which of those two prongs to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). In this case, the Court has already determined above that even when viewing the evidence in the light most favorable to Plaintiff, Defendants did not commit a constitutional violation. Moreover, even if it could somehow be said that they did conspire to maliciously prosecute Plaintiff in violation of the Fourth Amendment, it cannot be said that the illegality of their conduct was clearly known at the time of the incident underlying this lawsuit.

"[T]he touchstone of qualified immunity is notice." Bussey-Morice v. Gomez, 587 F. App'x 621, 627 (11th Cir. 2014) (per curiam) (citing Holmes, 321 F.3d at 1078). The violation of a constitutional right is clearly established if a reasonable official would understand that his conduct violates that right. See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). Under the Eleventh Circuit's framework for applying this step of the qualified immunity analysis, a plaintiff must show that the allegedly violated right was "clearly established" in one of three ways. First, the plaintiff may point to a case with indistinguishable material facts decided by the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state, affirming the existence of the right and "provid[ing] clear notice of the violation." Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007). Second, a broad statement of principle from "a federal constitutional or statutory provision or earlier case law" can provide notice that certain conduct amounts to a constitutional violation where the principle "applie[s] with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of

the Defendants' conduct." Id. Finally, the plaintiff may show that the alleged conduct of the officials was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1292 (11th Cir. 2009).

Here, Plaintiff has failed to meet his burden. Plaintiff does not cite any controlling or materially similar case law and does not identify "a broad legal principle" indicating that a county official's assessment of damage to a public road and subsequent referral to legal or investigative authorities for investigation amounts to a constitutional violation.[15] See Griffin Indus. v. Irvin, 496 F.3d 1189, 1209 (11th Cir. 2007). The Court's own research has likewise revealed none. Finally, Plaintiff has not shown that Defendants' conduct was "so egregious as to violate . . . the Fourth Amendment on its face." Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002). Thus, Plaintiff is unable to overcome Defendants' qualified immunity defense, and even if Plaintiff demonstrated facts amounting to a constitutional violation, Defendants are insulated from liability for violations of federal law.

### (2) Official Immunity

Defendants also argue that they are entitled to official immunity as to each of Plaintiff's state law claims. (Doc. 56-2, p. 24.) In Georgia, the doctrine of official immunity "offers public officers and employees limited protection from suit in their personal capacity." Cameron v.

---

[15] Plaintiff argues that the facts in Whittington v. Maxwell, a case from the Fifth Circuit Court of Appeals, "would put any rational government official on notice that encouraging an individual's prosecution to vent personal animus is to violate his clearly established rights." (Doc. 80, p. 14 (citing 455 F. App'x 450 (5th Cir. 2011) (per curiam).) The Whittington court found that the denial of qualified immunity was proper where the relevant facts supported an inference that the defendant official violated clearly established law by fabricating charges that resulted in the plaintiff's incarceration. Whittington, 455 F. App'x at 459–60. Whittington's material facts are not indistinguishable from the facts of this case. For instance, as discussed at-length in the preceding sections, the evidence in this case does not support a finding that any Defendant falsified or fabricated any charges against Plaintiff. Thus, Whittington is factually dissimilar and not "capable of putting every objectively reasonable officer on notice" that the conduct in this case violates clearly established law. See Long, 508 F.3d at 584. Moreover, a decision of the Fifth Circuit (an unpublished one at that) cannot provide a basis for piercing the shield of qualified immunity as to state actors in the Eleventh Circuit.

<u>Lang</u>, 549 S.E.2d 341, 344 (Ga. 2001); <u>see also</u> <u>Crosby v. Johnson</u>, 779 S.E.2d 446, 450 (Ga. Ct. App. 2015) ("When a county official is sued in his individual capacity, the doctrine of official immunity . . . is implicated."). Under the doctrine of official immunity, state officers and employees are "immune from individual liability for discretionary acts undertaken in the course of their duties and performed without willfulness, malice, or corruption." <u>Reed v. DeKalb County</u>, 589 S.E.2d 584, 586 (Ga. Ct. App. 2003). Here, the parties do not dispute that each Defendant was acting within his or her discretionary authority. (Doc. 56-2, p. 24; doc. 61, p. 25.) As such, the burden shifts to Plaintiff to show that Defendants acted with actual malice. <u>See</u> <u>Reed</u>, 589 S.E.2d at 589 (defendant entitled to summary judgment where plaintiff failed to offer evidence of actual malice).

In the context of official immunity, "actual malice" requires "a deliberate intention to do wrong." <u>Adams v. Hazlewood</u>, 520 S.E.2d 896, 898 (Ga. 2011). "Actual malice requires more than harboring bad feelings about another. [The] presence [of ill will] alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." <u>Id.</u> Evidence that merely shows "an intent to do the act purportedly resulting in the claimed injury[]" does not suffice. <u>Marshall v. Browning</u>, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011). Similarly, "deliberate intention to do wrong" means "the intent to cause the harm suffered by the plaintiff[]." <u>Murphy v. Bajjani</u>, 647 S.E.2d 54, 60 (Ga. 2007).

Here, Plaintiff has not put forth sufficient evidence to show that any Defendant acted with actual malice. As reiterated throughout this Order, the D.A. made an independent decision to prosecute Plaintiff and the record is devoid of evidence tending to show that Defendants' actions were calculated to influence the D.A.'s decision, let alone calculated to cause Plaintiff harm. Regardless of any personal or negative feelings Defendants harbored towards Plaintiff, he

has not shown that Defendants actions surrounding the water line were done with the intent to cause Plaintiff's purported harm.  See Greenway v. Northside Hosp., Inc., 763 S.E.2d 488, 489 (Ga. Ct. App. 2014) ("[E]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity.").  Accordingly, the Court finds that Defendants are entitled to official immunity from Plaintiff's state law claims.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants Jeff Davis County, Ray Wooten, Hugh Brantley, Wanda Marchant, Wayne Hall, Carla Roberts Powell, and Sheriff Preston Bohannon's Motion for Summary Judgment, (doc. 56).  The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

**SO ORDERED**, this 5th day of June, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA